UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-114-MOC

| | |
|---|---|
| HEATHER MCFERN MATHOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 12, 15). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

### I. Administrative History

Plaintiff applied for disabled widow's benefits on March 21, 2019. (Tr. 16, 235–36). Her application was twice denied: initially on July 25, 2019 and upon reconsideration on September 20, 2019. (Tr. 185–88, 194–98). On September 2, 2020, Social Security Administrative Law Judge ("ALJ") Joseph R. Doyle held an administrative hearing which Plaintiff attended with counsel. (Tr. 16). The hearing was conducted via telephone due to the COVID-19 pandemic. (Id.).

On October 5, 2020, ALJ Doyle issued a decision denying Plaintiff's application for benefits. (Tr. 16–32). On January 13, 2021 the Appeals Council denied Plaintiff's request for
1

review of ALJ Doyle's decision, thereby making his decision the Social Security Commissioner's final decision in this case. (Tr. 1–6).

In March 2021, Plaintiff filed a Complaint seeking judicial review of the Commissioner's decision denying Social Security disabled widow's benefits under Title II of the Social Security Act (the "Act"). (Doc. No. 1); see 42 U.S.C. §§ 405(g), 401–33.

## II.    Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.   Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record

2

should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has reviewed the transcript of Plaintiff's administrative hearing, the ALJ's decision, and the pleadings submitted by the parties. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence, as explained above. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

For purposes of the Act, "disability" means an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1383c(a)(3)(A).

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

3

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

The ALJ followed the five-step sequential evaluation in the analysis of Plaintiff's alleged disability. See 20 C.F.R. § 416.920(a). Specifically, the ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since April 1, 2016, the date when her alleged disability began. (Tr. 19). At Step Two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia; hypersomnolence; benzodiazepine dependence; lymphatic colitis; irritable bowel syndrome ("IBS"); and insomnia. (Tr. 19–23). At Step Three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 23).

Before proceeding to Step Four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in the regulations at 20 C.F.R. § 404.1567(b). (Tr. 24). He also found numerous additional work-related restrictions, stating that Plaintiff: (1) could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; (2) could only occasionally stoop, kneel, crouch, crawl, or balance; and (3) could only tolerate occasional exposure to machinery with moving mechanical parts, the use of commercial vehicles, or unprotected heights. (Tr. 24). The ALJ explained the basis for these findings in detail. (Tr. 24–29).

At Step Four, the ALJ found that Plaintiff retained the ability to perform her past relevant work as a jewelry vendor, basing this finding, in part, on testimony from a vocational expert ("VE"). (Tr. 29–30, 63–65). Because Plaintiff retains the ability to perform past relevant work, she cannot be considered disabled under the Act and applicable regulations. See 20 C.F.R. § 416.920(a)(4)(iv).

Although this finding essentially ended the inquiry, the ALJ nevertheless proceeded to make alternative findings at Step Five of the sequential evaluation process. Specifically, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that she was not disabled because she could still perform work available in significant numbers in the economy. (Tr. 30–32, 64–67). Explaining this finding, the ALJ established, again relying in part on the VE, that Plaintiff could still perform work in such sample job categories as a cashier, housekeeper, or self-service attendant. (Tr. 31–32). As a result, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 32).

## V. Discussion

Plaintiff challenges the ALJ's decision on the following grounds: (1) that the ALJ applied an incorrect legal standard when he discounted Plaintiff's fibromyalgia pain complaints as inconsistent with objective medical evidence, (Doc. 12-1 at 6–9); and (2) that substantial evidence does not support the ALJ's findings related to Plaintiff's subjective complaints of pain related to fibromyalgia, (Id. at 9–11). The Court agrees with the Commissioner that the ALJ, in fact, did apply the correct standards for evaluating both Plaintiff's fibromyalgia and Plaintiff's subjective complaints of pain related to fibromyalgia in the record. (Doc. No. 16 at 5–10). Therefore, the Court rejects Plaintiff's arguments.

### a. Plaintiff's Argument that the ALJ Applied an Incorrect Standard to Assess Plaintiff's Fibromyalgia Pain

Plaintiff relies upon the Fourth Circuit's decision in Arakas v. Comm'r of Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020), to argue that the ALJ applied an improper standard in addressing Plaintiff's fibromyalgia as well as her subjective claims. (Doc. No. 12-1 at 6–9). In particular, she claims that the ALJ arrived at his conclusions by limiting his analysis to whether the objective evidence supported Plaintiff's subjective claims of pain arising from fibromyalgia. (Id. at 6–9). Along similar lines, she asserts that the ALJ's decision "is unsupported by substantial evidence" because the ALJ did not properly consider Social Security Ruling 12-2p ("SSR 12-2p"). (Id. at 9–11). As the plain language of the ALJ's decision makes clear, there is no merit to either claim. The ALJ did not limit his analysis to a correlation, or lack thereof, between Plaintiff's subjective claims and objective findings. On the contrary, the ALJ analyzed in full Plaintiff's subjective claims by discussing the longitudinal evidence in the record,

6

Case 3:21-cv-00114-MOC   Document 19   Filed 03/25/22   Page 6 of 10

including such factors as her activities of daily living, medical opinion evidence, and statements she made throughout the record. (Tr. 19–29).

### b. Plaintiff's Argument that Substantial Evidence does not Support the ALJ's Findings with Respect to Subjective Complaints of Pain

Plaintiff again relies principally upon Arakas, a case in which the Fourth Circuit found that the ALJ in that case failed to consider "fibromyalgia's unique characteristics" when evaluating allegations of pain and fatigue and essentially required a claimant to cite objective evidence in support of her claims. 983 F.3d at 95–98. In doing so, the Fourth Circuit criticized the ALJ's reference to specific evidence, stating that the ALJ appeared to be citing evidence selectively without placing it in context with the rest of the evidence in the record. Id. at 99, 101. This caused the Arakas ALJ to ignore "the waxing and waning nature of fibromyalgia," and also to ignore the longitudinal record of the claimant's symptoms as a whole. Id. at 101.

This case is distinguishable. Unlike the decision at issue in Arakas, the ALJ Doyle's decision does not "indicate that the lack of objective medical evidence was his chief, if not definitive, reason for discounting [Plaintiff's] complaints." 983 F.3d at 96–97. Here, the ALJ acknowledged the unique nature of fibromyalgia and evaluated all of the evidence in the record. This did include references to objective findings, among them the "relevant clinical signs including muscle strength . . ., hyperreactive reflexes, somnolent appearance, and tender points in the upper and lower halves of her body." (Tr. 25). But there is no merit to Plaintiff's contention that the ALJ only considered objective findings because the ALJ then went on to consider multiple factors before concluding that the record as a whole "supports significant limitations, as reflected in the above residual functional capacity." (Tr. 25–26). This included references to Plaintiff's own statements, her treatment history, and statements from medical

7

sources. While the ALJ acknowledged that some evidence might have supported Plaintiff's subjective claims, he eventually concluded that the record as a whole did not support the extreme degree of limitations Plaintiff described.

First, the ALJ discussed and analyzed Plaintiff's own statements. This included her hearing testimony, where Plaintiff described significant pain throughout various parts of her body, and such symptoms as tingling with prolonged sitting, standing or walking. (Tr. 24). This also included Plaintiff's statement that she depends on others to help with household chores, though she did state that she could perform light housework. (Tr. 25). It further included statements that Plaintiff made to treatment providers, among them her statement that she experienced a "remarkable response" when she started gabapentin for her chronic pain, with reports that she was "more energized, more alert than she has [been] the last few years." (Tr. 28, 2805). Having discussed these statements, and evidence such as Plaintiff's statements that her symptoms did not keep her from travelling with her daughter or visiting her mother every other day (Tr. 20, 25), the ALJ noted that the "evidence is more consistent with [Plaintiff]'s ability to work within the above residual functional capacity than with the asserted extent of limitations." (Tr. 28).

Second, the ALJ discussed Plaintiff's treatment history, noting that it too undermined the subjective statements she made regarding her symptoms. (Tr. 28). As discussed above, treatment with gabapentin resulted in significant improvement in Plaintiff's symptoms and an increase in symptoms when she stopped. (Tr. 27–28, 2805, 2820–2821). Treatment notes describing Plaintiff's refusal to pursue certain treatments relating to other impairments provide further support for the ALJ's decision. (Tr. 27, Tr. 357–360 ("Patient not interested in seeing

8

neurosurgeon for reevaluation"), 1607 (discussing history of "lack of compliance" and cautioning Plaintiff's to "stay compliant with her regimen if she wants to stay mentally stable").

Finally, Plaintiff's argument that the ALJ should not have discussed objective evidence also ignores the fact that fibromyalgia was only one of several severe medical impairments. Given the other impairments identified by Plaintiff and discussed throughout the record, it was not error for the ALJ to conclude, as he did, that objective evidence did not support the degree of limitation Plaintiff alleged. (See, e.g., Tr. 26–27 (discussing inconsistency between Plaintiff's subjective claims and objective findings relating to, among others, IBS, colitis, and mental impairments)). Both 20 C.F.R. § 404.1529 and SSR 16-3p explain that while objective evidence will not be the sole basis for discounting a claimant's statements about the intensity, persistence, and limiting effects of her symptoms, including pain, such evidence will nevertheless be considered in making reasonable conclusions about the claimant's functioning. Arakas does not hold that any of that regulatory policy or sub-regulatory guidance is invalid.

## VI. Conclusion

The Court has reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, and the Commissioner's responsive pleading. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

9

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 12) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 15) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: March 25, 2022

Max O. Cogburn Jr
United States District Judge